UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

v.

DAVID MCCANN, *et al.*,

        Defendants.
------------------------------------------------------------x

**DECISION & ORDER**
23-CR-08 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On February 21, 2023, David McCann ("Defendant") filed a motion for appeal of the Honorable Magistrate Judge Taryn Merkl's Order of Detention. ECF No. 13. Magistrate Judge Merkl entered the Order on January 11, 2023 upon finding Defendant failed to present credible sureties to ensure the safety of the community. This Court held oral argument on Defendant's motion on March 1, 2023. For the reasons stated below, Defendant's appeal is **DENIED**.

## BACKGROUND

On January 6, 2023, the United States of America (the "Government") filed a sealed seven-count Indictment charging Defendant and others in connection with firearms and narcotics trafficking conspiracies. Specifically, the Indictment charges Defendant with: (1) Firearms Trafficking Conspiracy in violation of 18 U.S.C. §§ 933(a)(1) and 933(a)(2); (2) Firearms Tracking Conspiracy in violation of 18 U.S.C. § 922(a)(1)(A); (3) Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1); and (4) Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl in violation of 21 U.S.C. § 841(a)(1). *See* Indictment, ECF No. 1. The Government alleges Defendant and others "engineered a gun-trafficking conspiracy that distributed over 50 guns into our community, including 'ghost guns,' guns with defaced serial numbers, and guns used in shootings." Gov.'s Opp'n to Def.'s Renewed Appl. for Bail ("Gov.'s Opp'n"), ECF No. 38, at 1. The Government further alleges Defendant "engaged in significant narcotics trafficking conspiracies as well as a fentanyl distribution conspiracy that introduced thousands of lethal doses of fentanyl into our

community" and claims Defendant "served as a leader and facilitator of the scheme, brokering deals for guns and drugs from different suppliers." *Id.* at 2.

On January 11, 2023, Defendant was arraigned before Magistrate Judge Merkl and presented a bail application of $75,000.00 to be co-signed by his mother. Arraignment Transcript ("Tr."), ECF No. 37, at 18. The Government opposed Defendant's bail application on dangerousness grounds. *Id.* at 19. After hearing argument from both parties, Magistrate Judge Merkl ordered Defendant detained and granted Defendant leave to renew his bail application. *Id.* at 23-25. On February 21, 2023, Defendant filed a motion appealing Judge Merkl's detention order to the district court. Def.'s Renewed Appl. for Bail ("Def.'s Appeal"), ECF No. 35. The Government filed its opposition brief on February 24, 2023. *See* Gov.'s Opp'n. This Court heard oral argument on Defendant's motion on March 1, 2023.

The defense now proposes a $100,000.00 bond to be signed by Defendant and three financial sureties including (1) Patricia McCann, Defendant's mother, who is a home health aide with an income of $40,000.00 per annum; (2) Tricia McCann, Defendant's sister, who is a receptionist in the ophthalmology department at NYU Hospital, with an income of $50,000.00 per annum; and (3) Jaben Taylor, a house manager at American Samaritan Daytop Village, with an income $56,000.00 per annum. Def.'s Appeal at 2-3. The defense also indicates Defendant would consent to home detention with electronic monitoring as a condition of release. *Id.* at 3.

The Government opposes pre-trial release, arguing "Mccann poses a danger to the community because he trafficked dozens of dangerous guns. Moreover, the overwhelming evidence gathered during the investigation, coupled with the high penalties Mccann faces, gives him a strong incentive to flee and to obstruct justice." Gov.'s Opp'n at 4.

2

## **LEGAL STANDARDS**

The Eighth Amendment to the United States Constitution provides "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. It does not create a right to bail; rather, it prohibits *excessive* bail. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). Under the Bail Reform Act, a court must order pre-trial release of a defendant on a personal recognizance bond if such release will "reasonably assure the appearance of the [defendant] as required and will not endanger the safety of any other person in the community." 18 U.S.C. § 3142(b) (2018). Thus, if no condition or combination of conditions will reasonably assure the defendant will not flee or will not endanger others, a court must order detention. *Id.*

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant pending trial. *See United States v. Esposito*, 309 F. Supp. 3d 24, 30 (S.D.N.Y. 2018) (Marrero, J.) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). A district court undertakes a two-step inquiry when evaluating an application for bail. *See* 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e). "Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." *United States v. Maratea*, 18-CR-337-5 (WFK), 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018) (Kuntz, J.); *see also United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993).

Second, if the Government meets its initial burden, the Court must determine whether any conditions or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). In making this determination, the Court must consider the following factors: (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person in the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

The Government must support a finding of dangerousness by clear and convincing evidence, *see United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995), and a finding of risk of flight by a preponderance of the evidence, *see United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *see also United States v. Abuhamra*, 389 F.3d 309, 320 n.7 (2d Cir. 2004). A rebuttable presumption of dangerousness and risk of flight arises when a defendant is charged with a drug offense under 21 U.S.C. § 801 *et seq.* for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A). In accordance with this presumption, the Court must initially assume "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* at § 3142(e)(3). The defendant "bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). If the defendant satisfies the burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* However, even in a presumption case, "the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Id.*

## ANALYSIS

The Government argues Defendant poses a danger to the community and a risk of flight such that no combination of conditions could reasonably assure his appearance in this proceeding. For the reasons discussed below, the Court agrees.

### I. The Government Has Demonstrated Defendant's Dangerousness to the Community and Risk of Flight

The Court considers each of the 18 U.S.C. § 3142(g) factors (the "bail factors") in turn. In this Court's view, the bail factors support continued detention rather than release pending trial.

#### A. The Nature and Circumstances of the Offenses

According to the Government, Defendant Mccann served as the leader and facilitator of a firearms trafficking conspiracy alleged to have distributed over 50 guns throughout Brooklyn. Gov.'s Opp'n at 1-2. In addition to the inherent dangerousness of gun trafficking schemes, the Government argues the features of the conspiracy perpetrated by Defendant Mccann and his coconspirators made Defendant Mccann's activity particularly dangerous. Many of the guns at issue "had defaced serial numbers or were 'ghost guns,' purposely designed to avoid detection by law enforcement." *Id.* at 5. Mccann and his coconspirators also sold guns outside a public housing complex with over 4,000 residents and in a public park, among other places, and the "sales often occurred in broad daylight, which demonstrates Mccann's brazenness in disobeying the law." *Id.*

In addition to his role in the gun trafficking scheme, the Government alleges Defendant Mccann "conspired to sell more than 1,000 grams of fentanyl" to an undercover officer, and "engaged in a narcotics conspiracy that sold over 100 grams of cocaine base" to the undercover officer. *Id.* at 2. The Government highlights "the unprecedented lethality of fentanyl" and notes

5

the quantity of the drug sold by Mccann and his coconspirators "amounts to thousands of deadly doses." *Id.* at 6.

The Government emphasizes Mccann's leadership role in the gun and drug trafficking conspiracies, noting he brokered deals for guns and drugs and did "not hide that he was a leader of the scheme." *Id.* at 2. Indeed, according to the Government, "during one transaction where the [undercover officer] purchased drugs from Mccann's coconspirator, Mccann required the [officer] to make a supplemental payment to him, in addition to the payment made to the coconspirator, because, as Mccann explained, 'every transaction goes through me.'" *Id.*

In support of his bail application, Defendant Mccann argues he has no criminal convictions and no history of violence. Def.'s Appeal at 1. Defendant also highlights his history of employment and notes that "neither drug[s], drug paraphernalia or firearms" were recovered when law enforcement searched his apartment pursuant to arrest. *Id.* Nevertheless, the Government argues, "the evidence shows that Mccann . . . has ready access to a stream of drugs and guns, thus posing a serious danger to the community." Gov.'s Opp'n at 4-5. The Government also argues while "Mccann claims that the Court should credit his history of employment throughout his adult life," he "ignore[es] . . . that much of [his] income was supplemented through the proceeds of the drug and gun sales charged in the indictment." *Id.* at 5.

The Court agrees with the Government: Defendant Mccann's charged gun and drug trafficking activity is inherently dangerous. As Magistrate Judge Merkl explained at Defendant Mccann's arraignment, Mccann and his coconspirators "exhibited a disregard for the danger of the community" by "dealing guns in a highly-populated area." Tr. at 24. Defendant Mccann's

6

lack of criminal convictions and employment history do not mitigate "the dangerousness of [his behavior of] trafficking guns into this crowded community in which we all live." *Id.*

Additionally, Defendant Mccann would face lengthy maximum penalties if convicted of the charged offenses, further counseling in favor of pretrial detention. The Court recognizes Defendant Mccann is a lifelong resident of Brooklyn and nearly his entire family resides in New York. Def.'s Appeal at 1. However, when faced with the possibility of a significant prison term, defendants have a strong incentive to flee regardless of family and community ties. *See United States v. Blanco*, 570 Fed. App'x 76, 77 (2d Cir. 2014) (finding district court did not err in ordering detention where, *inter alia*, mandatory minimum prison sentence of five years and possible maximum sentence of 40 years "provid[ed] [the defendant] with a strong motive to flee before trial"). Defendant Mccann faces firearms trafficking offenses carrying up to 15 years' imprisonment, and drug conspiracy charges carrying a mandatory minimum of five years' imprisonment and a maximum of 40 years' imprisonment. See 18 U.S.C. § 933(b); 21 U.S.C. § 841(b)(l)(B)(vi); Gov.'s Opp'n at 6. As such, despite Defendant Mccann's ties to the community, he nevertheless has a strong incentive to flee. Accordingly, the Court concludes the nature and circumstances of the instant offenses favor detention.

B.   **The Weight of the Evidence**

The weight of the evidence against Defendant Mccann is strong. Defendant Mccann and his coconspirators were captured on video participating in the undercover officer's controlled purchases of guns and drugs. The Government also argues the evidence against Mccann "includes text and telephone records showing communications among the coconspirators and with the [undercover officer] around the times of the buys, GPS and social media evidence showing the defendants' whereabouts at particular times, in-person surveillance, and physical

evidence including firearms, ammunition, and narcotics." Gov.'s Opp'n at 7. Defendant Mccann makes no argument addressing the weight of the evidence against him.

Because it is "contrary to our legal system to impose punishment for a crime that a defendant has not yet been shown to have committed," courts are cautious against affording undue weight to this factor. *See United States v. Paulino*, 335 F. Supp. 3d 600, 613 (S.D.N.Y. 2018) (Carter, J.). At this early stage in the proceedings, the Court makes no conclusions about the merits of the Government's case. *See United States v. Zarrab*, 15-CR-867, 2016 WL 3681423, at *7 (S.D.N.Y. July 16, 2016) (Berman, J.) ("The Court recognizes the difficulty inherent in assessing the Government's case before trial, and is mindful not to reach any conclusions about [Defendant's] guilt or innocence" (internal citation and quotations omitted)). Nevertheless, significant evidence, including extensive documentation, of a defendant's role in a crime may weigh against his release. *See United States v. Fishenko*, 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013) (Johnson, J.) (finding evidence of "hundreds of pertinent recorded conversations . . . [revealing the defendant's] role in the conspiracy" weighed against release). The Court so finds here: the evidence against Defendant Mccann appears strong and weighs in favor of his continued detention. *See United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2016) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence upon conviction is likely to be long . . . a defendant has stronger motives to flee." (internal citation omitted)).

### C.     The History and Characteristics of Defendant

In assessing Defendant's characteristics, the Court looks to "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence

8

in the community, community ties, [and] past conduct." *Fishenko*, 2013 WL 3934174, at *2 (quoting 18 U.S.C. § 3142(g)(3)).

Defendant Mccann is 28 years old and a lifelong resident of Brooklyn. Def.'s Appeal at 1. Defendant argues he has strong ties to his community, as most of his family resides in Brooklyn. *See id.* Defendant has also been employed for most of his adult life, most recently as an assistant manager and salesperson at Game Stop, and previously as a security guard at a local hospital, a security counselor at Samaritan Village, and a rehabilitation specialist at Services for the Underserved. *Id.* Defendant also notes he has no previous criminal convictions. *Id.*

However, Defendant is alleged to have acted as a leader of significant gun and drug trafficking conspiracies. Gov.'s Opp'n at 1. While Defendant has ties to the Brooklyn community, these ties do not counterbalance the danger posed by Mccann's apparent "ready access to a stream of drugs and guns," *id.* at 4, or his incentive to flee the weighty charges against him.

D. **The Nature and Seriousness of the Danger Posed by Defendant's Release**

As previously stated, Defendant's alleged gun and drug trafficking activity is inherently dangerous. In assessing the dangerousness of a defendant's release, courts consider not only the danger posed to individuals, such as victims and witnesses, but also the possibility that a defendant might participate in "criminal activity to the detriment of the community." *Millan*, 4 F.3d at 1048. The Second Circuit has held narcotics trafficking conspiracies constitute this second type of danger, *see id.*, and district courts within this Circuit regularly find offenses involving guns, including firearms trafficking conspiracies, are detrimental to the community. *See, e.g., United States v. Thompson*, 436 F. Supp. 3d 631, 638 (W.D.N.Y. 2020) (Wolford, J.) (describing "a firearms trafficking conspiracy" as "allegedly result[ing] in significant harm to

9

[the defendant's] community" and ordering defendant detained on dangerousness grounds); *United States v. Smalls*, 20-CR-126 (LTS), 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (Swain, J.) (affirming magistrate judge's order of detention of defendant where, *inter alia*, there existed a "general danger to the community posed by [the defendant's] apparently ready access to firearms"). As such, the Court agrees with the Government that Defendant Mccann's apparent "ready access to a stream of drugs and guns," Gov.'s Opp'n at 4-5, poses a serious danger to the community.

II. **The Government Has Demonstrated No Conditions or Combination of Conditions Can Reasonably Assure the Safety of the Community or Defendant's Appearance in Court**

In light of the factors discussed above, the Court concludes there is no condition or combination of conditions that will reasonably assure the safety of the community and the appearance of Defendant as required. *See* 18 U.S.C. § 3142(e)(1). While the Court has no reason to doubt the intentions of Defendant's family and friends who are willing to act as sureties, their influence does not outweigh the danger Defendant Mccann's release would pose to the community. Nor do Defendant Mccann's proposed sureties and electronic monitoring condition sufficiently mitigate Defendant Mccann's incentive to flee given the significant penalties he faces. While the Court recognizes it is only a "limited group of offenders who should be denied bail pending trial," *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (internal quotations omitted), the Court concludes Defendant is among them.

## CONCLUSION

For the foregoing reasons, the Court concludes the Government has demonstrated by clear and convincing evidence that Defendant poses a danger to the community and by a preponderance of the evidence that Defendant is a flight risk, and that Defendant has failed to

rebut the presumption favoring his detention. Accordingly, Defendant's motion for appeal of detention is DENIED. Defendant will remain detained pending trial or another final disposition of this action.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 10, 2023
      Brooklyn, New York