UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                   :

UNITED STATES OF AMERICA,        :
                                     :
                                     :      **MEMORANDUM & ORDER**
      v.                              :      23-CR-8 (WFK)
                                     :

DAVID MCCANN,                    :
                                     :
                Defendant.       :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 28, 2024, Defendant pled guilty to Counts One and Seven of a seven-count Indictment in 23-CR-8, charging him with Firearms Trafficking Conspiracy, in violation of 18 U.S.C. §§ 933, and Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Plea Agreement ¶ 1, ECF No. 73; Indictment ¶¶ 1-8, ECF No. 1. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 108 months' imprisonment, to be followed by four years of supervised release with both special and standard conditions of supervision, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); and payment of a mandatory special assessment of $200.00.

## I.    Background

On January 5, 2022, an undercover law enforcement agent met with Defendant in Brooklyn, New York, to exchange telephone numbers. Sealed Presentence Investigation Report ("PSR") ¶ 7, ECF No. 87. The undercover officer posed as a drug dealer and expressed a desire to purchase firearms from Defendant for resale. *Id.* ¶ 6. Approximately two days later, Defendant and a co-conspirator sold controlled substances to the undercover officer. *Id.* ¶ 8. Over the next six months, Defendant arranged several such meetings where the undercover officer purchased firearms and drugs from Defendant or his co-conspirators. *Id.* Even when Defendant himself was not present at the sale, he served as the point of contact for the undercover officer and would

1

occasionally request money from his co-conspirators from meetings he did not attend. *Id.* ¶¶ 8, 10.

In total, Defendant and his co-conspirators sold fifty-five firearms and several different controlled substances to the undercover officer. *Id.* ¶ 11. Some of the firearms were semi-automatic and compatible with large capacity magazines. *Id.* The controlled substances included marijuana, oxycodone, cocaine, fentanyl, and heroin. *Id.* ¶ 12. Defendant sometimes sold firearms and controlled substances during the same transaction. *Id.* ¶ 11.

*Procedural History*

On January 6, 2023, a grand jury returned a seven-count Indictment against Defendant and his three co-defendants, Raymond Minaya, Calvin Tabron, and Tajhai Jones. Indictment ¶¶ 1–8. On January 11, 2023, DEA and NYPD agents arrested Defendant in New York. ¶ 15. On March 28, 2024, Defendant pled guilty to Counts One and Seven of the Indictment, charging him with Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933(a)(3), (b), and Fentanyl Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(vi). Plea Agreement ¶ 1. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment for Counts One and Seven of 121 months or below. *Id.* ¶ 4.

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court

2

the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*  The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.  *See* 18 U.S.C. § 3553(a).  The Court now addresses each factor in turn.

### III.    Analysis

#### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

#### *1.    Family and Personal Background*

Defendant was born on September 18, 1994, in Bronx, New York.  Sealed PSR ¶ 54.  He was adopted at birth by William Williams and Patricia McCann.  *Id.*  Defendant reported having a good relationship with his adopted father, who passed away in 2000, and with his adopted

3

mother. *Id.* Defendant was raised by his adopted mother in below-average economic circumstances. *Id.* ¶ 59. He did not experience abuse or neglect within his adopted family. *Id.*

Defendant's biological father was not present during Defendant's childhood, as he was deported to Jamaica when Defendant was young. *Id.* Defendant's biological father passed away approximately three years ago, and Defendant has not spoken to his biological mother in around three years. *Id.*

Defendant has six biological siblings, each adopted by different families. *Id.* ¶ 56. He also has six adopted siblings, two of whom have passed away. *Id.* ¶ 57. Defendant reports having good relationships with his adopted siblings. *Id.* Defendant further reports having one paternal half-sibling and other siblings he is unable to recall. *Id.* ¶ 58.

Defendant is currently in a relationship. Sealed PSR Addendum at 4, ECF No. 102; Sealed PSR ¶ 60. He has one child with his current partner, who has two children from a prior relationship. Sealed PSR Addendum at 4. All three children live with Defendant's partner and Defendant reports having good relationships with each. *Id.* Defendant has four other children from two prior relationships. Sealed PSR Addendum at 6; Sealed PSR ¶ 61(a).

Prior to his arrest, Defendant lived with his adopted mother and two adopted siblings. *Id.* ¶ 62. Defendant's adopted mother is currently employed as a home health aide and is supportive of Defendant. *Id.* ¶ 54.

4

2.      *Educational and Employment History*

Defendant attended the Academy for Business and Community Development for high school, but the school closed prior to Defendant's graduation. *Id.* ¶ 73. Defendant then attended Leadership Preparatory Bedford Stuyvesant Charter School but did not graduate. *Id.* In 2016, at the age of 21, Defendant earned his high school diploma from Liberation Diploma Plus High School. Sealed PSR Addendum at 7; Sealed PSR ¶ 74; Ex. A to Defense Sentencing Memorandum ("Def. Mem."), ECF No. 97-1. Defendant also reports obtaining certificates in CPR, fire safety, and fire guard. Sealed PSR ¶ 75.

Prior to his arrest, Defendant was primarily employed as a security guard. *Id.* ¶ 81–84. Defendant has also worked as a Senior Game Advisor at Game Stop, a Program Aide at Samaritan Daytop Village, a Rehabilitation Specialist at Services for the Underserved, and a handbag sales associate at Macy's. *Id.* ¶ 77–78.

While incarcerated, Defendant has served as a unit orderly and has attended educational courses in basketball-referee officiating and card-making. *Id.* ¶ 63. Defendant's work performance rating from the Bureau of Prisons states he is an organized, dependable, timely, and outstanding orderly. Sealed PSR Addendum at 6; Sealed PSR ¶ 63.

3.      *Prior Convictions*

Defendant has no prior criminal history. Sealed PSR ¶ 49.

4.      *Physical and Mental Health*

In 2017, Defendant tore a ligament in his right shoulder. *Id.* ¶ 65. He reports suffering back pain from the beds at the Metropolitan Detention Center ("MDC"). *Id.* He also reports experiencing stress and "mental break downs" from being incarcerated at the MDC. *Id.* ¶ 68.

5

5.    *Substance Abuse*

Defendant began smoking marijuana at age 14. *Id.* ¶ 70. Prior to his incarceration, Defendant used marijuana every day and consumed alcohol frequently. *Id.* ¶ 70–71. However, he reports never needing to seek treatment for his marijuana and alcohol use. *Id.* ¶ 72.

6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Over the course of six months, Defendant sold over fifty firearms and 1,000 grams of fentanyl to an undercover officer, introducing scores of unregulated weapons and controlled substances into the community. Government Sentencing Memorandum ("Gov't Mem.") at 8, ECF No. 99. Defendant's crimes pose a grave threat to public safety, especially in New York City, where "guns are tools of the trade and gun violence [is] a routine form of communication" for organized crime syndicates. *United States v. Cavera*, 550 F.3d 180, 204 (2d Cir. 2008) (Raggi, J., concurring). The Court's sentence serves to deter others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the citizens of this district. Accordingly, the

Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Firearms Trafficking Conspiracy, in violation of 18 U.S.C. § 933, and one count of attempted Fentanyl Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vi). Plea Agreement ¶ 1.

For Count One, Defendant faces a maximum term of imprisonment of fifteen years and no minimum term of imprisonment. 18 U.S.C. § 933. Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e). For Count Seven, Defendant faces a maximum term of imprisonment of forty years and a minimum term of imprisonment of five years. 21 U.S.C. § 841(b)(1)(B). Defendant also faces a maximum term of supervised release of life and a minimum term of four years. 21 U.S.C. § 841; 18 U.S.C. § 3583(e). If a condition of release is violated, Defendant may be sentenced to up to three years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e). Defendant is ineligible for probation on both counts. 18 U.S.C. §§ 3561(a)(3) and U.S.S.G. §5B1.1(b)(1)-(3).

In addition to facing terms of imprisonment and supervised release, Defendant faces other penalties. For Count One, Defendant faces a maximum fine of $250,000.00, or twice the gross gain or twice the gross loss caused by the offense, pursuant to 18 U.S.C. § 3571(b)(3) and

(d).  For Count Seven, Defendant faces a maximum fine of $5,000,000.00.  21 U.S.C.

§ 841(b)(1)(B).  However, Defendant appears unable to pay these fines.  Sealed PSR ¶ 91.  For

Count One, Defendant also faces mandatory restitution pursuant to 18 U.S.C. § 3663A.  The

final amount of restitution is unknown at this time.  *Id.* ¶¶ 14, 103.  The Court reserves its right

pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this

sentencing to determine the specific amounts owed to Defendant's victims.  Finally, the Court is

required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. §

3013(a)(2)(A), for a total of $200.00.

### D.  The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the

sentencing range established for . . . [t]he applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines."  18 U.S.C. § 3553(a)(4)(A).

Count One

The applicable Guidelines provision for Firearms Trafficking Conspiracy, 18 U.S.C.

§ 933, is U.S.S.G. § 2K2.1(a)(4).  This provision provides for a base offense level of 20 because

the offense involved a semiautomatic weapon capable of accepting a large capacity magazine,

and because Defendant was convicted under 18 U.S.C. § 933.  All parties agree certain

enhancements apply for Count One.  First, U.S.S.G. §2K2.1(b)(1)(C) authorizes a six-level

enhancement because the offense involved between 25 and 99 firearms.  Sealed PSR ¶ 11; Gov't

Mem. at 4.  Second, U.S.S.G. §2K2.1(b)(4)(B)(i) adds a four-level enhancement because some

of the firearms contained defaced serial numbers.  Sealed PSR ¶ 9.  All parties agree one level is

subtracted pursuant to U.S.S.G. §2K2.1, which states the cumulative offense level from the

application of U.S.S.G. §2K2.1(b)(1)-(4) may not exceed 29.

Probation and the Government argue four levels are added pursuant to U.S.S.G. §2K2.1(b)(5).[1] Defense counsel disagrees, contending a two-level enhancement applies under that provision. Def. Mem. at 3, ECF No. 97.

Probation also argues four levels should be added under U.S.S.G. §3B1.1(a) because Defendant was an organizer or leader of criminal activity. The Government and defense counsel argue this enhancement does not apply. Gov't Mem. at 5; Def. Mem. at 3.

Count Seven

The applicable Guidelines provision for Fentanyl Trafficking Conspiracy, 21 U.S.C. § 846 and 841(b)(1)(B), is U.S.S.G. §2D1.1. The base offense level is calculated based on the Drug Quantity Table in §2D1.1(c). Because Defendant is accountable for 2,682.35 kilograms of converted drug weight, the base offense level is 30, per U.S.S.G. §2D1.1(a)(5) and (c)(5).[2]

The Government argues two levels should be added because Defendant possessed a firearm while selling narcotics, per U.S.S.G. §2D1.1(b)(1). Gov't Mem. at 5.

---

[1] Under §2K2.1(b)(5) of the 2024 Guidelines, the Court should apply the greater of a two-level enhancement if the Defendant was convicted under 18 U.S.C. § 933(a)(2) or (a)(3); or a five-level enhancement if the Defendant attempted or conspired to "s[ell], or otherwise dispose[] of . . . two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who . . . intended to use or dispose of the firearms unlawfully." U.S.S.G. §2K2.1(b)(5) (2024). But under the 2021 Guidelines, which applied at the time of the offense conduct, four levels would be added for firearms trafficking. U.S.S.G. §2K2.1(b)(4) (2021) ("If the defendant engaged in the trafficking of firearms, increase by 4 levels."). Therefore, Probation and the Government argue the Court should apply the 2021 Guidelines to avoid an *ex post facto* violation. *See Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013) (holding that "there is an ex post facto violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense").

[2] The Plea Agreement estimates a base offense level of 26. Plea Agreement ¶ 2. The Government agrees the PSR correctly calculates the base offense level as 30. Gov't Mem. at 6–7.

Probation contends four levels should be added because the defendant was an organizer or leader of criminal activity involving five or more participants, per U.S.S.G. §3B1.1(a). Sealed PSR ¶ 36. The Government and defense counsel argue this enhancement does not apply. Gov't Mem. at 5; Def. Mem. at 3.

<u>Total Adjusted Offense Level</u>

Counts One and Seven are grouped because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. §3D1.2(c). The most serious offense level of the grouped counts is the one used. U.S.S.G. §3D1.3(a).

All parties agree certain reductions to the total offense level apply, including a two-level reduction under U.S.S.G. §3E1.1 (Acceptance of Responsibility) and a one-level reduction under U.S.S.G. §3E1.1(b) (timely notice to the Government of Defendant's intention to enter a guilty plea). Plea Agreement ¶ 2; Gov't Mem. at 5. The Government and defense counsel also agreed to a one-level reduction for the global resolution of this case pursuant to the public policy goals stated in U.S.S.G. §5K2.0. Plea Agreement ¶ 7.

Probation recommends a sentence of 108 months' imprisonment on each count, to run concurrently to each other; three years of supervised release on Count One and four years of supervised release on Count Seven, to run concurrently to each other; and a $200.00 Special Assessment Fee ($100.00 for each count). Probation Department Sentence Recommendation ("Prob. Sent. Rec.") at 3, ECF No. 87-1. The Government also recommends a sentence of 108 months' imprisonment. Gov't Mem. at 9. Defense counsel recommends a below-Guidelines sentence of 60 months' imprisonment. Def. Mem. at 1. This Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV.    Conclusion

For the reasons set forth above, the Court sentences Defendant to 108 months of custody; four years of supervised release with both the standard and special conditions of supervised release; and the mandatory $200.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine

given Defendant's apparent inability to pay.  The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

**SO ORDERED.**

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2025
          Brooklyn, New York